579 So.2d 1241 (1991)
Charlie BRYANT, Plaintiff-Appellant,
v.
VIKING INSURANCE COMPANY OF WISCONSIN, Defendant-Appellee.
No. 89-1259.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1991.
McHale, Bufkin & Dees, Louis D. Bufkin, Lake Charles, for plaintiff-appellant.
Plauche, Smith & Nieset, Christopher Ieyoub, Lake Charles, for defendant-appellee.
Before FORET, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
Based on a car accident that happened on February 4, 1986, Charlie Bryant sued Viking Insurance Company of Wisconsin, claiming that it provided him underinsured *1242 motorist coverage. Denying UM coverage, Viking moved for a summary judgment, and it was granted. Bryant appealed. We reverse.
The appeal raises two issues. The first is whether there was sufficient summary judgment evidence for the judge to find the facts. We conclude that there was, and say no more about that issue.
The other issue is more substantial. It is whether Viking's policy was a renewal or substitute policy, as contemplated by the 1985-86 version of La.R.S. 22:1406 (D)(1)(a). The trial court thought that it was. We disagree.
The facts which give rise to this legal issue are as follows. An application for auto insurance was made through Viking on October 26, 1985. The policy, number XX-XXXXXX, insured a 1980 Plymouth Fury. The named insured, Zula Bryant, specifically rejected UM coverage. The policy would have had a term from October 26, 1985, to April 26, 1986, but it lapsed for nonpayment of premium. It lapsed on December 29, 1985.
When Viking received a money order for $160 on February 4, 1986, its agent issued a "rewrite renewal payment" receipt, showing the same policy number XX-XXXXXX, naming the same Zula Bryant as the insured, for the same 1980 Plymouth Fury. The coverage was for a "new effective date" of February 4, 1986, and a "new expiration date" of August 4, 1986.
The Bryants had no insurance between December 29, 1985, and February 4, 1986. When the insurance picked up again on February 4, 1986, the named insured did not reject UM coverage. Charlie Bryant made a claim under the policy for UM benefits. Viking denied coverage, relying on the rejection of UM in the original application.
La.R.S. 22:1406(D) requires that insurers provide UM coverage, but such coverage can be rejected by the insured. Under the law as it reads as we write this opinion, an initial rejection of such coverage is good for renewal, reinstatement or substitute policies. The provision in La. R.S. 22:1406(D)(1)(a), effective during 1985-86, however, contained a rejection carry-over provision limited to renewal or substitute policies. It then read:
Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer.
In 1988 the above language was amended by the insertion of "reinstatement" preceding "or substitute policy". This change was made and became effective after the issuance of this policy and after the accident in this case.
Whether or not this statutory language operated to carry over the insured's rejection of UM coverage on October 26, 1985, to the policy issued with the new effective date of February 4, 1986, is the issue before us. When Viking moved for a summary judgment, the stated ground for its motion was that the first rejection of UM was still good because the policy with the new effective date and new expiration date was a "reinstatement". In its brief on appeal, however, Viking refers to the second policy as one which was "revived, renewed, reinstated or substituted". The cases on which Viking relies on appeal dealt only with renewal policies. The trial court gave no reasons for judgment, so we do not know what the trial court thought the new policy was.
By the process of elimination, we conclude that the February 4 policy was not a renewal policy. To determine what a renewal policy is, we need only look at the statute defining it. La.R.S. 22:636.1(A)(5) defines a "renewal" policy as one issued and delivered to replace "at the end of the policy period" a policy previously issued and delivered by the same insurer. A renewal can therefore occur only at the end of the policy period it renews; it is not a renewal if the second issuance occurs after the end of the first policy period. A renewal contemplates uninterrupted coverage.
In the present case there was a period of about five weeks between the lapse of the first policy and the issuance of the second one. During this five weeks, there was no insurance, no contractual relationship between insurer and insured.
*1243 Viking relies on two cases from this circuit, Mouton v. Guillory, 494 So.2d 1374 (La.App. 3rd Cir.1986), and Myers v. Thibeaux, 365 So.2d 266 (La.App. 3rd Cir. 1978). These cases apply the statute, and say that a renewal or substitute policy does not have to contain evidence of rejection of UM once the initial policy establishes a rejection. The distinguishing feature between these two cases, and our present case, is that the renewals took place regularly at the end of each successive policy period. In other words, they were renewals as defined in our law. Our present case is not a renewal.
Nor was this a substitute policy, because the second policy here was not for different coverage. The distinction between a substitute and reinstated policy is given in 18 Couch on Insurance 2d §§ 69.1-69.3, Revival and Reinstatement. If there is coverage and an agreement is made for a different coverage, there is a substitution of policies. To reinstate an insurance policy means to restore the insured to all the benefits accruing under the policy contract. For there to be a reinstatement, it is necessary that there be an interval during which the insured no longer is covered by insurance.
What we have in the present case was a reinstatement. A reinstated policy was made subject to the rejection carry-over provision of La.R.S. 22:1406(D)(1)(a) by Act 203 of 1988. The effective date of the act was September 9, 1988. The policy in the case before us was issued in 1986 and the accident happened in 1986. The expansion of the rejection carry-over provision to include a reinstatement was a substantive law, and it applied prospectively only. La.C.C. art. 6. Therefore, Act 203 of 1988 is not applicable to this case. The summary judgment was in error.
For the reasons assigned, we reverse and set aside the summary judgment dismissing this action, and remand the case for further proceedings.
REVERSED AND REMANDED.