690 So.2d 261 (1997)
Deborah DAIGLE
v.
ALLSTATE INSURANCE COMPANY.
No. 96-CA-1352.
Court of Appeal of Louisiana, Fourth Circuit.
March 5, 1997.
Writ Denied May 1, 1997.
Ricci & Giepert, Jack A. Ricci, Gary J. Giepert, New Orleans, for Plaintiff-Appellee Deborah Daigle.
Hailey, McNamara, Hall, Larmann & Papale, John T. Culotta, Metairie, for Defendant-Appellant Allstate Insurance Company.
Before SCHOTT, C.J., and BARRY and KLEES, JJ.
KLEES, Judge.
Allstate Insurance Company, defendant, appeals the judgment of the district court, holding the company liable for higher limits of uninsured motorist coverage than originally designated for the policy covering plaintiff Deborah Daigle. Upon our review of the record, we reverse.
On September 9, 1991, Deborah Daigle was in an automobile accident with Melissa Stierwald. Stierwald and her insurer, State Farm, settled with Daigle for the State Farm policy limits. However, Daigle had incurred damages greater than those limits.
Daigle's insurer, Allstate, is therefore next in line to cover Daigle's damages. The issue in dispute is the extent of Allstate's liability.
When Deborah's father, to whom the policy was issued, signed up with Allstate, he executed a selection of lower limits of uninsured *262 motorist coverage. Normally, under such a policy, UM coverage would be $100, 000/$300,000; Mr. Daigle signed a form providing that he would instead accept lower limits of $5000/$10,000. He signed this form on December 8, 1987. At this time, his family owned four automobiles.
Between this election of lower limits and the accident in question, however, the Daigles made various changes in their policy. Specifically, they sold several cars and purchased several others; sales and purchases were not always made simultaneously. However, at no time did the Daigles insure more than the original four vehicles. Also, another driver was added to the policy: Deborah's brother, Edgar Daigle III.
When Allstate only offered coverage under the original, lower limits, Daigle filed suit against Allstate, arguing that the alterations in her family's drivers and automobiles constituted material changes that created a new policyin which case, a separate selection of lower coverage limits would have been required. Allstate argued that the vehicle changes made to the policy in that time were only substitutions, and thus the Daigle's policy was sustained as a renewal policy, one in which the original selection of lower limits remained valid.
Both Daigle and Allstate moved for summary judgment on the issue of coverage limits; the district court ruled in favor of Daigle, finding that cars had been added to the policy and not deleted, and therefore were additions rather than substitutions. A separate selection of lower limits would have been necessary; since there was no such selection, the district court ruled that the higher limits of coverage were effective. From this judgment Allstate appeals.
An initial rejection or selection of lower limits of UM coverage is valid for renewal, reinstatement and/or substitute policies, and the insurer is therefore absolved from greater UM liability for such policies. See Allen v. State Farm, 617 So.2d 1308, 1312 (La.App. 3 Cir.1993), Bryant v. Viking Ins. Co. of Wisconsin, 579 So.2d 1241 (La.App. 3 Cir. 1991).
Not every alteration in an insurance policy or insurer's position mandates that an insurance policy be considered new, rather than a renewal. Lovoi v. Ladreyt, 94-1002 (La.App. 5 Cir. 4/12/95), 655 So.2d 387, writ denied, 95-1216 (La.6/23/95), 656 So.2d 1031. Specifically, Louisiana courts have held that changes in vehicles that are only substitutions for previously covered vehicles do not convert a renewal policy into a new policy. See Tugwell v. State Farm Ins. Co., 597 So.2d 1039 (La.App. 1 Cir.1992), reversed on other grounds, 609 So.2d 195 (La.1992.) However, the addition of even a single car can create a new policy. Donaghey v. Cumis Insurance Society, 600 So.2d 829 (La.App. 3 Cir.1992.)
This situation falls between these two bright lines. Neither the Daigles nor Allstate clearly designated the new cars as additions or substitutions at the time they were added to the policy; however, based on the information before us, we conclude that the vehicles must be regarded as substitutions.
The record shows that the Daigles sometimes did not obtain and cancel cars simultaneously. However, at no time did they ever own and operate more than the four cars originally covered under the policy. As the policy was designed to cover four cars, the newer vehicles brought in must be thought of first as substitutions for the older cars already deleted.
Also worthy of note is Mr. Daigle's deposition; he states at one point that he considered these cars as replacementsthat he was switching to better vehicles for his children. Later, when asked if he was substituting the new vehicles for the old, he agreed. Apparently he originally intended for these cars to be substitutes for the older ones he had sold. If the Daigles themselves considered these cars to be substitutions, then the vehicles should retain that classification.
Finally, we consider Daigle's contention that the addition of Edgar Daigle III as a driver constitutes a material change to the policy. This argument is without merit. Although the addition of another insured person to a policy can constitute a truly material change, Edgar Daigle III was already an *263 insured person under their original policy. The alteration in his status, from an insured passenger to a driver, is not significant enough to convert the renewal policy into a new policy.
After our review of the record and for the reasons stated above, we cannot join in the reasoning of the trial court. Accordingly, we reverse the judgment of the lower court and remand this case for further proceedings.
REVERSED.