610 So.2d 214 (1992)
Lloyd LANDRY, et al., Plaintiffs-Appellees,
v.
John I. HAMILTON, et al., Defendants-Appellants.
No. 91-1337.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1992.
Rehearing Denied January 21, 1993.
*215 Sera H. Russell, Lafayette, for plaintiffs-appellees.
Paul D. Palermo, Gregg L. Spyridon, New Orleans, for defendant-appellant Intern. Ins.
Lisa McCowen, Lafayette, for defendant-appellant Nat. Standard Ins.
Cyd Page, Lafayette, for defendant-appellee Fluid Dynamic.
Judith Z. Gardner, Michael O'Brien, Lafayette, for intervenor-appellant Aetna.
David A. Hurlburt, Lafayette, for defendant-appellant Old Republic Ins.
David E. Marquette, Baton Rouge, for defendant-appellee Lloyds.
Before GUIDRY, DOUCET and WOODARD, JJ.
GUIDRY, Judge.
The issue on appeal is whether the trial court properly dismissed Fluid Dynamics, Scottsdale Insurance Company and National Standard Insurance Company from this suit. We affirm.
Plaintiff, Lloyd Landry, was injured in a vehicular accident on Louisiana Highway 14 near Delcambre on August 8, 1988, when a pick-up truck operated by defendant, John Hamilton, crossed the center line and struck his vehicle. Landry was in the course and scope of his employment, driving a tractor-trailer "rig" leased by his employer, Fluid Dynamics, from Ryder Truck Rental, Inc., a subsidiary of Ryder System.
Hamilton was insured by Certified Lloyds who admitted liability in the accident and placed its $10,000 policy limit into the registry of the court.
Ryder was covered by two insurance policies, an auto-truck liability policy written by Old Republic Insurance Company and an umbrella policy issued by International Insurance Company. Fluid was covered for vehicle liability insurance by National Standard Insurance Company, general liability insurance by Scottsdale Insurance Company and workers compensation coverage by Aetna Casualty and Surety Company.
Landry originally filed suit on January 3, 1989 and, as a result of supplemental pleadings and the filing of cross and/or third party demands, all of the above identified individuals and entities became parties to the suit. Initially, Ryder System and Ryder Rental were named by Landry as defendants. The plaintiffs' claims as to Hamilton and Lloyds sought to establish their *216 liability and responsibility for causing the accident. The remaining claims against and among all other parties are intertwined with questions of the existence, the amount, and ranking of policies of UM insurance, and indemnity obligations.
Landry asserted UM claims against Ryder Rentals, Ryder System and Old Republic. By motion for summary judgment, Ryder Rental, Ryder System and Old Republic sought to be dismissed. Ryder Rental and Ryder System asserted that neither entity was an insurance carrier and therefore were not obligated to provide UM protection. The court agreed with this reasoning and rendered judgment in favor of Ryder Rental and Ryder System, dismissing them from this suit. However, summary judgment was denied as to Old Republic, the trial court finding that an issue of fact existed as to whether UM coverage had been validly rejected.
Sometime after all of the various parties were before the court, a joint petition for declaratory/summary judgment was filed by all parties. This joint petition sought a declaration of what entities provided UM coverage, the ranking of coverages, validity of UM rejections, entitlement to indemnity, and intervention rights. The matter came on to be heard on May 21, 1991, and was taken under advisement by the trial court.
The trial court entered an amended judgment on August 8, 1991, concluding that:
(1) Certified Lloyds provided the first $10,000 in coverage;
(2) Old Republic provided the next layer of coverage from $10,000.01 to $110,000.00, in underinsured motorist benefits;
(3) International provided the next layer of UM coverage from $110,000.01 to $5,110,000.00;
(4) Aetna, the worker's compensation intervenor, was not entitled to claim reimbursement from the layer of coverage provided by Old Republic;
(5) National Standard provided no coverage and accordingly all claims against it were dismissed with prejudice; and,
(6) all claims against Fluid and Scottsdale were ordered dismissed with prejudice.
Timely appeals were taken by the parties, excepting National Standard, Fluid and Scottsdale. Thereafter, a motion to dismiss was filed by Landry as to all appeals. On February 12, 1992, this court dismissed all appeals except the appeal concerning dismissal of this matter as to National Standard, Fluid and Scottsdale, concluding that the portions of the trial court's judgment relative to the ranking and determinations of coverage was interlocutory and a nonappealable judgment. Accordingly, it is only the appeal which concerns the dismissal of all claims against the three parties above named which is now before the court.

DISMISSAL OF NATIONAL STANDARD INSURANCE COMPANY
National Standard's policy of vehicle liability insurance issued to Fluid provided UM coverage. The trial judge gave the following reasons for dismissing National Standard:
The policy includes the following exclusion:
"In consideration of the premium charged, it is agreed that such insurance as is afforded by the policy does not apply with respect to any claim arising from accidents which occur while any automobile is being operated by Lloyd J. Landry, Jr."
National has no liability for any losses or damages sustained while any auto otherwise insured under the policy was being driven by Lloyd Landry. This exclusion has the effect of causing any auto driven by him to lose its covered status. Mr. Landry was thus not occupying a covered auto. The uninsured motorist provisions of National's policy do not apply to him. Tate v. Hanover, 526 So2d 1302 (3 Cir.1988).
Several parties argue that the endorsement is ineffective because it is neither *217 dated nor signed. The only formalities, required by R.S. 22:628, are that an endorsement be in writing and physically made a part of the policy. This endorsement meets both requirements. (Emphasis ours)
La.R.S. 22:628 states:
No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance. This Section shall not apply to contracts as provided in Part XV of this Chapter.
The provisions of this Section shall apply where a policy or other written evidence of insurance is coupled by specific reference with another policy or written evidence of insurance in existence as of the effective date hereof or issued thereafter.
Any written agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be deemed to be physically made a part of a policy or other written evidence of insurance, within the meaning of this section, whenever such written agreement makes reference to such policy or evidence of insurance and is sent to the holder of such policy or evidence of insurance by United States mail, postage prepaid, at such holder's last known address as shown on such policy or evidence of insurance or is personally delivered to such holder.
The statutory provisions above set forth clearly support the trial judge's conclusions. Additionally, as we observed in Tate, supra, "... the named party exclusion is well recognized in the insurance industry and is not contrary to public policy". For these reasons, we affirm the trial court's judgment which dismisses all demands against National Standard with prejudice.

DISMISSAL OF FLUID DYNAMICS AND SCOTTSDALE INSURANCE COMPANY
Scottsdale is the general liability insurance carrier for Fluid. The claims against both Fluid and Scottsdale arise by virtue of the third party demand of Old Republic wherein Old Republic asserts it is due indemnification from Fluid and Scottsdale under the terms of the rental agreement. Old Republic specifically relies on paragraph 8 of the rental contract. Paragraph 8 states in pertinent part:
8. Renter agrees to release, indemnify and hold Owner harmless from and against:
(a) Any claim or cause of action for death or injury to persons or loss or damage to property in excess of the limits of liability insurance provided for herein, whether provided by Owner pursuant to paragraph 4 or renter pursuant to paragraph 5 and arising out of or caused by the use of the vehicle rented hereunder, in any such claims or causes of action which Owner shall be required to pay as a result of any statutory requirements of insurance and which owner would not otherwise pursuant to the terms hereof be required to pay.
(b) Any and all losses, damages, costs and expenses incurred by the owner or its insurance company, unless specified otherwise on page 1 of this agreement because of injury or damage sustained by any occupant of said vehicle, including and without limitation, renter, renter's employees, agents or representatives and loss or damage to the cargo or property owned by or in the possession of renter, renter's employees, agents or representatives or occupants.... (Emphasis ours)
In dismissing Fluid and Scottsdale, the trial judge stated:
Paragraph 8(b) does not apply to this case because Fluid "specified otherwise on page 1" by selecting A under "Insurance Changes (Liability)". Paragraph 8(a) applies to this case. No indemnity is due. Ryder has been dismissed from the case. It has no loss.
The "Insurance Changes (Liability)" paragraph is reproduced here:
*218 
Paragraph (4), referenced above, is the acknowledgment by Ryder that the vehicle is covered under the Old Republic policy which is available for renter's review at its main offices upon request. Further that renter is an insured under the policy and agrees to comply with and be bound by all its terms and conditions which are expressly incorporated and made part of the rental agreement.
The limits of liability insurance provided to renter are, for a truck type tractor equipped with a fifth wheel (as Landry was operating), $100,000 per person, $300,000 per occurrence and $25,000 for property damage.
On appeal, Old Republic argues that the trial judge erred in finding only paragraph 8(a) applicable, and further, it argues that (1) inasmuch as Ryder has been dismissed from the suit any benefit that would accrue to Ryder under the contract falls to it; and/or (2) Old Republic has a right to indemnity independently of Ryder under the principle of stipulation pour autrui.
We find that Old Republic has specific rights under paragraph 8(a) as provided by the terms of the contract, i.e., Old Republic's exposure is reduced to $100,000 per person and $300,000 per occurrance of personal injury damages rather than the $7,000,000 limit of their policy issued to Ryder.
We find that the trial judge erred in ruling paragraph 8(b) of the contract is not applicable. The language of said paragraph specifically refers only to occupants of the rented vehicle (note: paragraph 8(a) applies to "persons", without limitation). It requires the renter to indemnify "... the owner [Ryder] or its insurance company [Old Republic] ..." for "[a]ny and all losses, damages, costs and expenses ... unless specified otherwise on page 1 of this agreement...". (Emphasis ours) We conclude that the language "unless specified otherwise" does not make the paragraph inapplicable, but rather refers to Fluid's selection of the coverage limits specified in paragraph (4).
Thus, paragraph 8(b), when read in conjunction with the "Insurance Changes (Liability)" section of the contract and paragraph (4), serves to limit "any and all losses" to $100,000/$300,000 for occupants of the vehicle in the same way paragraph 8(a) limits the liability coverage to "persons".
Thus, if it is ultimately determined that Ryder validly rejected UM coverage, Old Republic would not be exposed to any UM liability. If the attempted rejection is ultimately ruled invalid, then Old Republic would provide UM coverage but limited to the amount specified in paragraph (4), i.e., $100,000/300,000. In any case, no indemnity would be due Old Republic under the policy and therefore the result reached by the trial court is correct.
Finally, Old Republic contends that no UM protection is specifically provided for under its policy and therefore if such protection should be statutorily mandated, Ryder and its insured, Old Republic, are *219 entitled to indemnity under paragraph 8(a) of the lease agreement which grants indemnity to the owner for all sums which it is "... required to pay as a result of any statutory requirements of insurance and which owner would not otherwise pursuant to the terms hereof be required to pay".
We find no merit to such contention. Appellant, in his argument, has taken the above quoted phrase out of context. It should be read in pari materia with the whole paragraph. When one reads it in context, it is clear that the indemnity provision applies to any sums which Ryder or Old Republic may have to pay in excess of the $100,000/300,000 limits in the contract because of statutory mandate. The statutory liability requirements in Louisiana are far below the limits set in the contract. Additionally, paragraph 8(a), by its terms, applies only to the owner (Ryder) and not its insurer. The trial court correctly observed that Ryder has been dismissed from this suit and therefore no indemnity is due.
Further, to allow the relief sought by Old Republic would be tantamount to allowing indemnity to an insurer against its own insured, which our law does not permit.
For these reasons, we affirm the judgment of the trial court insofar as it dismisses all demands against Fluid Dynamics, Scottsdale Insurance Company and National Standard Insurance Company. Costs of this appeal are to be borne equally by Old Republic Insurance Company, International Insurance Company and Aetna Casualty and Surety Company. Costs at the trial level are to await a final determination of this matter.
AFFIRMED.